613 A.2d 1174

CATHRYN ROSS, PLAINTIFF–RESPONDENT, v. JOSEPH McNASBY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted September 21, 1992—Decided October 6, 1992.

Before Judges J.H. COLEMAN, SHEBELL and A.M. STEIN.

*John T. Kubit,* attorney for appellant.

Respondent's brief was suppressed.

The opinion of the court was delivered by

COLEMAN, J.H., P.J.A.D.

This is an appeal from a judgment denying defendant's application to vacate the registration of a child support order that originated in the "Provincial Division, Ontario Court, (Fam-

ily Division), Kingston, Ontario." The Canadian order provided that defendant was $23,397.20 in arrears, and judgment was entered in plaintiff's favor for that amount. The registration of the Canadian support order and the entry of judgment pursuant thereto are based on the Revised Uniform Reciprocal Enforcement of Support Act (RURESA), *N.J.S.A.* 2A:4–30.60 and *N.J.S.A.* 2A:4–30.61. Custody is not in issue on this appeal.[1]

Plaintiff, a Canadian citizen, and defendant were married in Camden County on February 24, 1979. Three children were born during the marriage: Joseph Edward, born April 25, 1979, Kathryn Michele, born January 26, 1981, and Steven James, born August 3, 1982. The family resided in Berlin, Camden County, New Jersey, until November 1987.

On November 3, 1987, without permission from defendant or a court, plaintiff left the marital home with the children. On November 10, 1987, defendant obtained an *ex parte* order from a judge sitting in the Family Part in Camden awarding him temporary custody of the children. Notice of these proceedings was not given to plaintiff because her whereabouts were unknown to defendant at that time.

After defendant discovered that plaintiff was residing in Canada with the children, he retained the services of a Canadian solicitor. On December 6, 1987, defendant filed an action in the Provincial Court (Family Division) County of Frontenac, Ontario, Canada, to enforce the New Jersey order awarding him temporary custody. On the same day, plaintiff filed an action in the Provincial Court seeking custody of the children.

On December 23, 1987, plaintiff and defendant appeared before Judge Pedlar in the Provincial Court, Family Division, at Kingston, Ontario, and each was represented by an attorney.

---

[1] For a discussion of the Convention on the Civil Aspects of International Child Abduction, adopted at The Hague on October 25, 1980, see *Duquette v. Tahan*, 252 *N.J.Super.* 554, 600 *A.2d* 472 (App.Div.1991).

The judge refused to enforce the New Jersey order because notice had not been given to plaintiff. The judge permitted plaintiff to retain custody of the children. Defendant was granted supervised visitation with the children in Ontario. The judge retained jurisdiction in the case to protect the best interest of the children.

Pursuant to a motion filed by plaintiff's attorney and responded to by defendant's Canadian attorney, Judge Pedlar issued an interim order on January 20, 1988 requiring defendant to pay child support in the sum of $200 per week for the three children. That order further provided that "This matter is adjourned to February 24, 1988, at 9:30 a.m. to be spoken to." Between February 1988 and November 15, 1988, defendant made 15 payments of varying amounts.

A court hearing was conducted before Judge Fair in the Provincial Court on November 25, 1988 in the presence of plaintiff and defendant and their respective attorneys. At that time, defendant acknowledged, through his consent, that the arrears should be fixed at $4,997.20. The judge ordered the payment of certain sums by specific dates to satisfy the arrears. The judge directed that if defendant failed to make the required payments on the arrears, "a Warrant of Committal shall issue committing the Debtor [defendant] to prison for a continuous period of forty-five days unless or until the payment or payments in default shall be paid in full." Although the above order was based on the hearing conducted on November 25, 1988, the order apparently was not signed by Judge Fair until March 12, 1990.

When defendant failed to pay the arrears of approximately $5,000, a warrant was issued for his arrest. On April 4, 1990, defendant's attorney requested the Canadian Court to stay enforcement of both the warrant and his support obligation. He was $18,797.20 in arrears as of March 30, 1990, having failed to make any payments after November 15, 1988. The stay was denied.

On May 10, 1990, Judge Pedlar granted custody to plaintiff and granted defendant liberal visitation in and outside of Ontario. The judge also reduced defendant's support obligation from slightly more than $800 a month to $600 a month. As of October 12, 1990, the arrears were $23,397.20. The Canadian support order, reflecting that amount, was registered in New Jersey, pursuant to *N.J.S.A.* 2A:4–30.60. Defendant has not challenged the accuracy of that amount.

In this appeal, defendant argues that "foreign support awards must be enforced under principles of comity" and "the Ontario support order fails the test of comity and registration must be denied." We reject these contentions.

We begin by noting that when defendant first undertook any legal action on April 4, 1990 to prevent or to stay execution of the arrest warrant, he was already in arrears by more than $18,000. He has not challenged the fact that the original support order was issued at a time when the court had in personam jurisdiction over him.

■ We reject defendant's notion that there is a linkage between plaintiff having custody of the children in Canada and his parental support obligation. *N.J.S.A.* 2A:4–30.45 provides that "[t]he determination or enforcement of a duty of support owed to one obligee is unaffected by any interference by another obligee with rights of custody or visitation granted by a court." *See also Daly v. Daly,* 21 *N.J.* 599, 609, 123 *A.*2d 3 (1956); *Monmouth County v. Lohman,* 229 *N.J.Super.* 485, 488, 551 *A.*2d 1051 (App.Div.1989); *Muller v. Muller,* 212 *N.J.Super.* 665, 673, 515 *A.*2d 1291 (Ch.Div.1986). RURESA is a device to enforce support orders previously entered. *Essex County Adjuster v. Brookes,* 198 *N.J.Super.* 109, 114, 486 *A.*2d 875 (App.Div.1984).

■ Defendant argues that a support order from a foreign country should not be registered in New Jersey pursuant to RURESA. We reject that contention. *N.J.S.A.* 2A:4–30.26*l* defines "State" to include "any foreign jurisdiction in which

this or a substantially similar reciprocal law is in effect." On September 12, 1989, the Administrative Director of the Courts of New Jersey informed the Ministry of the Attorney General in Ontario, Canada, that New Jersey had established reciprocity with the Province of Ontario in accordance with RURESA. Based on that reciprocity, the plaintiff-obligee registered the support order in New Jersey. *See N.J.S.A.* 2A:4-30.57.

■ Defendant argues further that the support order should not be enforced under principles of comity because he was denied the right to participate "in a custody trial for [his] three infant children." This contention is based on an unsubstantiated factual assertion. As we noted earlier, when the initial support and custody issues were decided in Ontario, defendant was present in court, and he was represented by counsel. On May 10, 1990, when defendant did not attend the final custody hearing allegedly because of the arrest warrant, he was already more than $18,000 in arrears. Therefore, less than 25% of the amount of arrears reflected in the registered support order accrued after the final custody hearing. In addition, as noted earlier, there is no linkage between support and custody.

Beyond that, we are entirely satisfied that the alleged "due process" violation is nothing more than a smoke screen. The arrest warrant was analogous to our rule in aid of litigants rights, *R.* 1:10–5. The arrest warrant was issued, not as defendant contends to prevent him from seeing the children or participating in the final custody hearing, but simply to enforce the support order. The coercive incarceration was limited to a maximum of 45 days, apparently in recognition of the fact that further incarceration would become punitive. *See Catena v. Seidl,* 65 *N.J.* 257, 262–264, 321 *A.*2d 225 (1974), 66 *N.J.* 32, 327 *A.*2d 658 (1974) and 68 *N.J.* 224, 343 *A.*2d 744 (1975); *Pierce v. Pierce,* 122 *N.J.Super.* 359, 360, 300 *A.*2d 568 (App.Div.1973). As such, recognition of the foreign support order under the principle of comity does not contravene the public or judicial policy of this state. *See Philadelphia v. Austin,* 86 *N.J.* 55,

64, 429 *A.*2d 568 (1981); *Fantony v. Fantony,* 21 *N.J.* 525, 533, 122 *A.*2d 593 (1956).

The judgment under review is affirmed.[2]

---

[2] We find it unnecessary to respond to defendant's unsupported contention that insofar as RURESA permits reciprocity with foreign countries, it violates *U.S. Const.* art. I, § 10. *But see Clark v. Allen,* 331 *U.S.* 503, 516–517, 67 *S.Ct.* 1431, 1438–1439, 91 *L.Ed.* 1633, 1645–1646 (1947); *Blouin v. Dembitz,* 367 *F.Supp.* 415, 417–418 (S.D.N.Y.1973), *aff'd.* 489 *F.*2d 488 (2d Cir.1973).